# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA MOBILE DIVISION

| | |
|---|---|
| STEVEN BERKLEY, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No.: |
| V. ) | |
| ) | |
| NAVY FEDERAL CREDIT UNION, ) | JURY TRIAL DEMANDED |
| ) | |
| DEFENDANT(S). ) | |
| ) | |

# COMPLAINT

## JURISDICTION

1. The plaintiff brings this action for injunctive relief and damages under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A). The plaintiff further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

1

**PARTIES**

4. Plaintiff, Steven Berkley, ("Plaintiff" or "Berkley") is a resident of Spanish Fort, Baldwin County, Alabama, and performed work for the Defendant in the counties composing the Southern District of Alabama, Mobile Division during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Southern District of Alabama, Mobile Division.

5. Defendant Navy Federal Credit Union or Navy Federal Financial Group, LLC ("Defendant" or "Navy Federal") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama. It is subject to service of process in Alabama.

6. Defendant employed at least fifteen (15) people during the current or preceding calendar year.

7. Defendant employed at least 500 people during the current or preceding calendar year.

8. Defendant reported $1,367,698,000.00 in net income in 2023.

**FACTS**

9. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

10. Steven Berkley began his employment with defendant on or about January 10, 2010.

11. Berkley's final position with Defendant was as a Member Service Representative.

12. When Berkley began his employment he worked for Defendant at the Pensacola, Florida site.

13. Berkley was marked as having exceedingly well performance and outperformed many of his peers.

14. Defendant never issued Berkley any disciplinary write ups during his employment.

15. In or about 2017, Berkley sustained back and neck injuries in a car accident.

16. After the accident, Berkley was left with musculoskeletal issues, including herniation, spondylosis, and chronic back and neck pain.

17. Starting in 2020, Defendant sent employees home to work remotely during the Covid-19 pandemic.

18. In 2022, Defendant began ordering employees to return to the office after the pandemic.

19. After returning to the office, Berkley complained to Manager Joe Forte that other people were being allowed to work remotely full-time.

20. Forte admitted to Berkley that it was true that other employees in Berkley's position were being allowed to work remotely.

21. In or about August 2022, Berkley requested an accommodation to work remotely from home due to his disabilities.

22. On or about August 23, 2022, Defendant's HR sent medical information request forms to Berkley for his physician to complete.

23. On or about August 26, 2022, Berkley's physician completed the accommodation paperwork and submitted it to Defendant.

24. Berkley's physician noted on the paperwork that Berkley needed the accommodation to work from home for his disabilities on a permanent basis.

25. Berkley's accommodation request was initially approved by Defendant on September 14, 2022.

26. Thereafter, Berkley's manager, Beverly Harwood, continued to tell Berkley that he needed to contact the accommodations department again.

27. On or about February 27, 2023, Stephanie Hutchinson, from Defendant's medical accommodations department, yelled at Berkley during a conversation and told him that he didn't need the accommodation.

28. Berkley was given a warning because of this conversation with Hutchinson about his need for accommodation.

29. On or about February 28, 2023, Defendant sent Berkley another medical information request form for his physician to fill out regarding his disability.

30. On or about March 15, 2023, Berkley's physician completed and submitted the additional forms to Defendant.

31. Even though Berkley's physician had provided sufficient information to reflect Berkley's need for reasonable accommodation to work from home, Defendant's Medical Accommodations department again requested more information for clarification.

32. Defendant offered Berkley a standing desk and ergonomic chair at the office - this suggestion would not accommodate Berkley's disability.

33. Berkley requested remote work to limit the aggravation to his neck and back – which could not be accomplished because of the prolonged period of driving to the office.

34. On or about June 8, 2023, Berkley's physician again explained to Defendant's Medical Accommodations department that the accommodation it suggested would not meet Berkley's physical limitations because it would require him to commute to the office, which would exacerbate the herniation and spondylosis.

35. Defendant cited no job tasks that would require Berkley to be physically in the office.

36. Defendant cited no burden on the company as to why they were denying Berkley's accommodation request to be in place permanently.

37. The Company was able to provide remote work as it had provided that option for its employees in Plaintiff's department during the pandemic and continued to offer hybrid work arrangements even after the pandemic receded.

38. Moreover, at all times relevant to this Complaint, Plaintiff was performing the essential functions of his job remotely without issue.

39. Defendant's employee, Brett Leach - Assistant Manager terminated Plaintiff's employment on or about October 19, 2023, and cited Berkley's need for accommodations during the meeting.

## COUNT I: ADA FAILURE TO ACCOMMODATE

40. Plaintiff incorporates by reference and realleges paragraphs 1-39 as if set out herein.

41. Plaintiff suffers from physical impairments – back and neck injuries sustained from a car accident in 2017.

42. After the accident, Plaintiff was left with musculoskeletal impairments, including herniation, spondylosis, and chronic back and neck pain.

43. Plaintiff's back and neck injuries affect him such that the major life activities of sitting or driving for prolonged periods is significantly restricted as compared to the average person in the general population.

44. Plaintiff requested the reasonable accommodation of being able to work from home full time.

45. Plaintiff requested that Defendant provide a reasonable accommodation, to continue working remotely as he had been successfully doing so for several years.

46. Plaintiff performed the essential functions of his job with accommodation for his disability.

47. Defendant failed to engage in the interactive process required by the Americans with Disabilities Act even though Plaintiff performed the essential functions of his job.

48. Defendant failed to offer Plaintiff accommodation that would accommodate his physical limitations.

49. Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## COUNT II: ADA DISCRIMINATION - TERMINATION

50. Plaintiff incorporates by reference and realleges paragraphs 1-39 as if set out herein.

51. Plaintiff suffers from physical impairments – back and neck injuries sustained from a car accident in 2017.

52. After the accident, Plaintiff was left with musculoskeletal impairments, including herniation, spondylosis, and chronic back and neck pain.

53. Defendant knew of Plaintiff's disability.

54. Plaintiff's back and neck injuries affects him such that the major life activities of sitting or driving for prolonged periods is significantly restricted as compared to the average person in the general population.

55. Plaintiff performed the essential functions of his job with accommodation for his disability.

56. At all times relevant to this complaint, Plaintiff performed the essential functions of his duties as Member Service Representative in a satisfactory or better manner while working remotely.

57. On or about October 19, 2023, Defendant terminated Plaintiff's employment, citing his disability as the reason.

58. There is no logical, medical, or other basis to believe that Plaintiff's disability would prevent Plaintiff from performing the essential functions of the job.

59. But for Plaintiff's disability, Defendant would have retained Plaintiff in his position as a Member Service Representative.

60. Defendant violated the ADA by terminating his employment because of his disability.

61. Because of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the Americans with Disabilities Act;

B. Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position he would have had, had he not been terminated;

C. Award him back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

D. Attorneys' fees and costs;

E. Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

F. Any different or additional relief as determined by the Court to which Plaintiff is entitled.

*/s/Kira Fonteneau*
Kira Fonteneau
Lacey Wilson

**OF COUNSEL:**

THE WORKERS FIRM LLC

2 North 20th St, Suite 900
Birmingham, AL 35203
(404) 382-9660
kira@theworkersfirm.com
lacey@theworkersfirm.com

## PLEASE SERVE DEFENDANT AS FOLLOWS

**Navy Federal Credit Union**

**820 Follin Lane Southeast**

**Vienna, VA 22180**